# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| DONALD CARROLL,<br>on behalf of Plaintiff and the class<br>members described below,<br><br>           Plaintiff,<br><br>vs.<br><br>HYUNDAI MOTOR AMERICA<br>(CORPORATION), and GENESIS<br>MOTOR AMERICA LLC,<br><br>           Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT – CLASS ACTION

## INTRODUCTION

1. Plaintiff DONALD CARROLL brings this action to secure redress for the failure of Defendants Hyundai Motor America (Corporation) ("HMAC") and Genesis Motor America LLC ("GMA"), which are related entities, to inform consumers that the BlueLink feature and "connected services" in their Hyundai and Genesis vehicles would be rendered obsolete and unusable upon the 3G sunset in 2022.

2. Between 2014 and 2020, Hyundai and Genesis manufactured and sold Vehicles with the BlueLink feature and "connected services," which they touted in advertising. The "connected services" included the SOS emergency button and crash reporting.

3. HMAC and GMA consistently marketed their vehicles as safe and proclaimed safety as one of HMAC and GMA's highest corporate priorities.

4. The BlueLink feature and "connected services" depended on 3G wireless technology supplied by Verizon. HMAC and GMA knew this. Consumers did not.

5. HMAC and GMA knew by 2012 that 3G services would be phased out. However, they continued selling Vehicles and touting the BlueLink feature and "connected services," without warning consumers of the impending termination.

6. Verizon discontinued 3G services on December 31, 2022, at which time the BlueLink feature and "connected services" ceased to function.

7. By making ubiquitous misrepresentations about BlueLink and the Vehicles affected, Defendants (i) engaged in deceptive acts in violation of New Jersey's Consumer Fraud Act (the "NJCFA"), N.J. Stat. § 568-2, *et seq;* and (ii) breached express and implied warranties by description in violation of N.J. Stat. $ 12A:2-313(b) (which is also known as UCC § 2-313(b); violated the Magnuson-Moss Warranty Act, and committed other wrongdoing.  Defendants are liable to Plaintiff and all other similarly situated members of the Class defined below for all damages resulting from the claims herein

## JURISDICTION AND VENUE

8. This Court has jurisdiction under 28 U.S.C. §1332(d). The amount in controversy, on a classwide basis, exceeds $5 million, exclusive of interest and costs. There are more than 100 class members.  Plaintiff is a citizen of New Jersey. Defendants are citizens of California.

9. Venue in this District is proper under 28 U.S.C. §1391 because a substantial part of the conduct giving rise to these claims occurred in this District.  HMAC and GMA also conducted and continue to conduct substantial business in the District, have many dealerships in the District, and profit from their activities in the District.

## PARTIES

10. Plaintiff DONALD CARROLL is a resident of the District of New Jersey.

11. Defendant HMAC is a California corporation with its principal offices at 10550 Talbert Ave., Fountain Valley, CA 92708.  It does business in Illinois.

12. HMAC is engaged in the importation and distribution of Genesis, Hyundai and Kia automobiles.

13. Defendant GMA is a limited liability company organized under California law

with its principal office at 10550 Talbert Avenue, Fountain Valley, CA 92708.

14. Defendant GMA is engaged in the importation and distribution of Genesis automobiles, which are made by Hyundai.

15. Hyundai holds out Genesis as a division.

16. Genesis vehicles are sold as "Hyundai Genesis" vehicles.

17. At all relevant times, HMAC and GMA have acted in concert with respect to the provision of the BlueLink feature and "connected services".

## **FACTS – GENERAL**

18. Since the late 1990's, vehicle telematics had developed from a novelty to a necessary component. General Motors ("GM") first cornered the market with its 1996 OnStar telematics unit. Over time, what had once been a novelty had "quietly become a profit margin superstar" for GM, with revenues estimated at approximately $1.5 billion annually and a profit margin of 30-35% – much higher than the profit margin on the vehicles.

19. Competitors began challenging GM's telematics leadership, pouring billions of dollars into telematics systems and wireless connectivity. Telematics systems became critical components for manufacturers attempting to distinguish their products from competitors. One 2013 study by the consulting firm Accenture found that in-vehicle technology had become the top selling point for 39% of car buyers.

20. About 2014, Hyundai and Genesis introduced the BlueLink feature and "connected services," which included the SOS emergency button and crash reporting.

21. The instrumentation and controls of vehicles equipped with the BlueLink feature and "connected services" refer to the BlueLink feature and "connected services," as set forth in the BlueLink manual of every vehicle it is equipped. This is a representation that the BlueLink feature and "connected services" are present and will work on the vehicle.

22. The BlueLink feature and "connected services" operated using 3G networks.

23. The BlueLink feature was equipped with technology only compatible with 3G networks. The system could not be upgraded or adapted to function with later generation

networks.

24. HMAC and GMA knew or should have known since the inception of the BlueLink feature that 3G would be replaced by later generation 4G and 5G networks, as a result of (1) publicly available notices and announcements by the Federal Communications Commission; (2) public announcements by telecommunications companies transitioning to 4G and later generation broadband; and (3) communications between Defendants and Verizon during the design and development of the BlueLink system.

25. As early as 2008, the FCC auctioned the 700 MHZ spectrum to buyers intending to transition to 4G LTE. By 2009, the transition to 4G networks was already beginning.

26. Verizon continuously communicated its intent to decommission its 3G networks. As early as 2010, Verizon announced that it would transition its entire 3G network to 4G LTE. CONNECTING AM.: THE NATIONAL BROADBAND PLAN, 2010 WL 972375 at 77 (F.C.C. Mar. 16, 2010) *available at* https://transition.fcc.gov/national-broadband-plan/national-broadband- plan.pdf.

27. In 2012, Verizon formed the "4G Venture Forum for Connected Cars" to "accelerate development of the 4G LTE ecosystem across automotive OEMs, suppliers, device manufacturers, application developers and content publishers." TELECOMLEAD, *Verizon Join Hands with BMW, Honda, Hyundai, Toyota for 4G Connected Cars Forum* (Aug. 5, 2012), https://www.telecomlead.com/4g-lte/verizon-join-hands-with-bmw-honda-hyundai-and-toyota-for-4g-connected-cars-forum-9709.

28. In 2015 Verizon launched the Verizon Hum, an aftermarket telematics system compatible with 4G networks.

29. Since 2016, Verizon has been publicly announcing its plans to decommission its 3G CDMA network. Mike Haberman, *3G CDMA Network Shut Off Date Set for December 21, 2022,* VERIZON NEWS CENTER (March 30, 2022), https://www.verizon.com/about/news/3g-cdrna- network-shut-date-set-december-3 l-2022

30. Despite knowing about 3G's imminent obsolescence, Defendants equipped their

vehicles with a 3G-only telematics system which could not be adapted to use later networks.

31. Defendants deceived Plaintiff and class members by marketing, promoting, selling and leasing vehicles equipped with a 3G telematics system knowing that the product was going to become obsolete.

## FACTS RELATING TO PLAINTIFF

32. Plaintiff purchases a 2017 Genesis G 80 at Sansone AutoMall in Avenelle, New Jersey.

33. In purchasing the vehicle, Plaintiff relied on the fact the vehicle was equipped with the BlueLink feature and "connected services," which included the SOS emergency button and crash reporting.

34. HMAC and GMA failed to disclose that the BlueLink feature and "connected services" would cease functioning when the 3G network was closed.

35. In late 2022, the BlueLink feature and "connected services" ceased functioning as a result of the cessation of Verizon 3G service.

## CLASS ALLEGATIONS

36. Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), Plaintiff brings this action on behalf of the following classes:

> a. Nationwide class: All persons or entities in the United States who are current or former owners and/or lessees of a vehicle equipped by Defendants with the BlueLink feature and "connected services."
>
> b. New Jersey class: All persons or entities in the State of New Jersey who are current or former owners and/or lessees of a vehicle equipped by Defendants with the BlueLink feature and "connected services" or who purchased or leased such a vehicle in the State of New Jersey.

37. Excluded from the proposed classes are Defendants, their employees, officers, directors, legal representatives, subsidiaries and affiliated companies; class counsel and their

employees; and the judicial officers and their immediate family members and associated court staff assigned to this case, as well as all persons within the third degree of relationship to any such person.

38. There are more than 100 members of each class, and each class is so numerous that their individual joinder is impracticable.

39. Plaintiff is informed and believes there are hundreds of thousands of purchasers in the class.

40. Insofar as class members may be identified through business records regularly maintained by Defendants and their employees and agents, the number and identities of class members can be readily ascertained.

41. Plaintiff's claims are typical of the class members' claims. All are based on the same factual and legal theories.

42. Plaintiff will fairly and adequately represent the class members because his interests do not conflict with the interests of the class members, he has retained counsel competent and highly experienced in complex class action litigation, and intends to prosecute this action vigorously.

43. A class action is superior to all other available means of fairly and efficiently adjudicating these claims. Each individual class member suffered a relatively small injury compared to the burden and expense of individually prosecuting the complex and extensive litigation. It would be virtually impossible for class members to effectively redress the wrongs done to them on an individual basis. Furthermore, there is no reason to burden the courts with individual cases presenting the same issues.

44. Common questions of law and fact exist as to all class members and predominate over questions affecting only individual class members. These include:

    a. Whether HMAC and GMA engaged in the conduct alleged herein;

    b. Whether HMAC and GMA knew or should have known that the

|     |                                                                                                                                                                                                                                    |
| --- | ---------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------------- |
|     | BlueLink feature and "connected services" system would become obsolete;                                                                                                                                                            |
| c.  | Whether HMAC and GMA knew or should have known that defects existed with respect to the BlueLink feature and "connected services" that would lead to permanently disabling the system;                                             |
| d.  | Whether HMAC and GMA caused the BlueLink feature and "connected services" system to become inoperable upon the inevitable discontinuation of the 3G broadband spectrum;                                                            |
| e.  | Whether HMAC and GMA intentionally, negligently or recklessly failed to disclose and/or concealed the imminent obsolescence of the BlueLink feature and "connected services";                                                      |
| f.  | Whether HMAC and GMA owed a duty to Plaintiff and Class Members to disclose the imminent obsolescence and inoperability of the BlueLink feature and "connected services" system;                                                   |
| g.  | Whether HMAC and GMA's failure to disclose information about the BlueLink feature and "connected services" system was material;                                                                                                    |
| h.  | Whether HMAC and GMA made representations concerning the existence of the BlueLink feature and "connected services" by including controls on vehicles, listing them on window stickers, and including them on written materials;   |
| i.  | Whether HMAC and GMA's unlawful, unfair, and/or deceptive practices harmed Plaintiff and the class members;                                                                                                                        |
| j.  | The appropriate relief.                                                                                                                                                                                                            |

**TOLLING AND STATUTES OF LIMITATIONS**

45. HMAC and GMA's knowing and active concealment and denial of the facts alleged herein toll any applicable statutes of limitations. Plaintiff and class members could not reasonably have discovered the true, latent nature of the defect complained of until shortly before commencing this class action litigation.

46. Plaintiff and class members had no reasonable ability to discover the presence of the problem complained of within the applicable statute of limitations through the exercise of reasonable diligence.

47. Any statutes of limitation otherwise applicable to any claims asserted herein thus have been tolled by the discovery rule.

48. All applicable statutes of limitations have also been tolled by HMAC and GMA's knowing, active and ongoing fraudulent concealment of material facts alleged herein.

49. HMAC and GMA had a duty to disclose, among other things, the 3G-only capabilities and imminent obsolescence of the BlueLink feature and "connected services" system.

50. Despite their knowledge, HMAC and GMA actively concealed these material facts from Plaintiff and class members while continuing to profit from the sale and lease of vehicles equipped with technology HMAC and GMA knew would become obsolete, as well as from the sale of "connected services."

51. As a result of HMAC and GMA's active concealment, any and all applicable statutes of limitations otherwise applicable to the allegations herein have been tolled.

**COUNT 1-Violations of New Jersey's Consumer Fraud Act, N.J.S.A. § 56:8-2,** *et seq.*

**(On Behalf of the Nationwide Class or Subclasses of State Buyers)**

52. Plaintiff incorporates paragraphs 1-55.

53. Plaintiff brings this claim on behalf of himself and members of the national class.

54. HMAC and GMA misrepresented that vehicles had functioning BlueLink

and "connected services" by providing controls for such feature and services on the vehicles equipped with them, and by representing in written materials provided or made available to all owners of Defendant's vehicles, that they had such feature and services.

55.    HMAC and GMA failed to disclose that the feature and services would cease functioning when the 3G network was closed.

56.    The facts HMAC and GMA misrepresented and concealed are material because they directly impact the safety of their vehicles. A reasonable consumer would have considered them to be important when deciding whether to purchase the vehicles or pay a lesser price.

57.    HMAC and GMA acted with the intent to induce Plaintiff and the class members to purchase vehicles at a higher price than they otherwise would have paid.

58.    HMAC and GMA's practices, as detailed herein, violated the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1, et seq.

59.    As a direct and proximate result of Defendants' violations of the New Jersey Consumer Fraud Act, Plaintiff and other members of the Class have suffered ascertainable losses, which include but are not limited to, the diminished value of their vehicles and the failure to receive the benefit of the bargain promised to them by Defendants (i.e., the vehicles they received were less valuable at the time of purchase or lease than the vehicles Defendants promised to them); and the substantial out-of-pocket costs which will be required to make BlueLink operable on a 5G system. Accordingly, Plaintiff and other members of the Class were harmed by, and Defendants are liable for, Defendants' actions in violation of the New Jersey Consumer Fraud Act.

60.    Defendants are liable to Plaintiff and the members of the Class for treble damages caused by their deceptive conduct, and for reasonable attorneys' fees as set forth in the New Jersey Consumer Fraud Act.

61.    Plaintiff and the class members justifiably relied on the representations. HMAC and GMA were in exclusive control of the material facts and such facts were not known to the

public, Plaintiff, and/or members of the class.

62. As a direct and proximate result of HMAC and GMA's misrepresentation of material facts, Plaintiff and class members sustained damage as set forth herein and are entitled to actual, compensatory and punitive damages, attorneys' fees and costs, and other relief in an amount to be proved at trial.

63. HMAC and GMA's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of the rights of Plaintiff and the class members. Its conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

WHEREFORE, the Court should enter judgment in favor of Plaintiff and the members of the national class and against HMAC and GMA for:

a. Compensatory damages;

b. Punitive damages;

c. Costs of suit;

d. Such other or further relief as is appropriate

**COUNT 2 - Breach of Express Warranty by Description in Violation of N.J. Stat.§ 12A:2-313(b) (On Behalf of the Nationwide Class Or Alternatively State Subclasses)**

64. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

65. Plaintiff brings this claim against HMAC and GMA on behalf of themselves and the Nationwide Class pursuant to Section 2-313(b) of the Uniform Commercial Code, adopted under New Jersey law pursuant to N.J. Stat. § 12A:2-313(b). That section provides: "Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to that description."

66. HMAC and GMA described Bluelink in its advertisements, press releases, specifications provided to dealers, information provided to the press, and through other media as

adaptable to changing technologies which it knew would be communicated to consumers either directly or indirectly. Defendants' description included that BlueLink would function as represented for the life the Vehicles indefinitely were express warranties by description under N.J. Stat. $ 12A:2-313(b).

67. HMAC and GMA's express warranties by description were designed to induce Plaintiff and other members of the Class to purchase the Vehicles.

68. HMAC and GMA express warranties by description became part of the basis of the bargain into which Plaintiff and other members of the Class entered when they purchased the Vehicles.

69. Given the modern significance of compatibility of vehicles with cell phones, protocols and wireless standards as represented by HMAC and GMA's prominent representations. The natural tendency of the descriptions of BlueLink was to induce the purchase or lease of the Vehicles.

70. HMAC and GMA breached express warranties by description with Plaintiff and other members of the Class by delivering Vehicles that were not, and never could be, compatible with later generators of service.

71. By delivering a vehicle with BlueLink limited to 3G only and lacking compatibility with next generations, HMAC and GMA breached its express warranty by description to the purchasers and lessees of the vehicles, including the Plaintiff and members of the Class.

72. As a direct and proximate result of HMAC and GMA breach of its express warranties by description with Plaintiff and the members of the Class, Plaintiff and the members of the Class did not receive the full benefit of their bargain and suffered damage by receiving vehicles that were less valuable than the vehicles that Defendants had represented to them, and by paying out-of-pocket

costs in order to ensure that the BlueLink features could operate on next generation facilities.

73. HMAC and GMA are liable to Plaintiff and the members of the Class for all damages caused by Defendants' breach of express warranties by description.

### COUNT 3 - Violation Of Magnuson-Moss Warranty Act, 15 U.S.C. §2310(d)1(A)
### (On Behalf of the Nationwide Class)

74. Plaintiff incorporates the foregoing paragraphs as if set forth fully in this count.

75. This claim is brought as a state law claim under 15 U.S.C. § 2310(d)(l)(A) and is before this Court as a supplemental state court claim for each of the state subclasses pursuant to diversity jurisdiction under CAFA.

76. The proposed class representative and class members are consumers within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301(3).

77. Vehicles are consumer products within the context of the Magnuson-Moss Warranty Act, 15 U.SC. $ 2301(1).

78. HMAC and GMA are suppliers and/or warrantors within the context of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301(4)-(5).

79. HMAC and GMA express warranties are written warranties within the context of the Magnuson-Moss Warranty Act, 15 U.$.C. $ 2301(6). Vehicles implied warranties created by operation of state law are incorporated into the Magnuson-Moss Warranty Act as modified by§ 2308.

80. HMAC and GMA breached the express and implied warranties accompanying Class Vehicles as described in this complaint.

81. The Magnuson-Moss Warranty Act provides a claim for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

82. HMAC and GMA's breach of their express and implied warranties was the direct and

proximate cause of the proposed class representative and proposed class members' financial harm as more fully set out in the preceding warranty counts, and constitutes a violation of the Magnuson-Moss Warranty Act.

83. At the time of sale or lease of each Class Vehicle, the Defendants knew, should have known, or were reckless in not knowing of their misrepresentations and omissions concerning the Class Vehicles' inability to perform as warranted, but nonetheless failed to rectify the situation and/or disclose the limitation, as described in this complaint. Under the circumstances, the remedies available under any informal settlement procedure would be inadequate and any requirement that Vehicles resort to an informal dispute resolution procedure and/or afford the HMAC and GMA a reasonable opportunity to cure their breach of warranties is excused and thereby deemed satisfied.

84. The proposed class representative and class members would suffer economic hardship if they returned their Vehicles but did not receive the return of all payments made by them.

85. Wherefore, proposed class representative and proposed class members demand judgment against HMAC and GMA including multiple monetary damages, interest, costs and attorney's fees.

### COUNT IV - Unjust Enrichment

86. Plaintiff incorporates the foregoing paragraphs as if set forth fully in this count.

87. The Defendants benefited financially from their breaches of warranty and misrepresentations as described in this complaint.

88. The proposed class representative and class members sustained monetary damages as described in this complaint.

89. Allowing the Defendants to retain their monetary enrichment from their wrongful and

unlawful acts would be unjust and inequitable.

90.     The proposed class representative and class members request that the Defendants disgorge their profits from their wrongful and unlawful conduct and that the Court establish a constructive trust funded by the benefits conferred upon the Defendants as a result of their wrongful conduct. The proposed class representative and class members should be designated beneficiaries of the trust and obtain restitution for their out-of-pocket expenses caused by the Defendants' conduct.

91.     Wherefore, the proposed class representative and class members demand judgment against defendant for multiple damages, interest, costs and attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief in the form of an order as follows:

a.      Certifying this action as a class action under Federal Rule of Civil Procedure 23, and appointing Plaintiff as class representative and his attorneys as class counsel;

b.      Awarding actual damages to Plaintiff and the Members of the Class;

c.      Awarding attorneys' fees, expenses, and the costs of this suit, together with prejudgment and post-judgment interest at the maximum rate allowed by law; and

d.      Awarding such other and further relief which the Court finds just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all claims so triable.

Dated: February 28, 2023

                                          Respectfully submitted,

                                          _____
                                          Mark T. Sadaka, Esq.,
                                          **SADAKA ASSOCIATES, LLC**
                                          155 North Dean Street, Suite 4-D
                                          Englewood, NJ 07631
                                          Tel: (201) 266-5670
                                          Fax: (201) 266-5671
                                          Email: mark@sadakafirm.com
                                          *Attorneys for Plaintiffs*